**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Carla West,

    *Plaintiff,*

v.

Home Depot, U.S.A., Inc.,

    *Defendant*

No. 21 CV 1145

Judge Lindsay C. Jenkins

**MEMORANDUM OPINION AND ORDER**

Carla West ("Plaintiff" or "West") brings this negligence action against Home Depot, U.S.A., Inc. ("Defendant" or "Home Depot") for injuries she suffered when several drywall studs fell from a store display and hit her on the head and shoulders. Home Depot seeks summary judgment on all of the claims. [Dkt. 43]. For the reasons explained below, the motion is denied.

## I. Background

The following facts are taken from the parties' Local Rule 56.1 statements and the exhibits filed with them. [See Dkts. 45, 48, 50, 53.] These facts are undisputed except where a dispute is noted. Plaintiff is a resident of Texas. Home Depot is a Delaware corporation with its principal place of business in Georgia. The events giving rise to this suit occurred on January 15, 2020 at the Home Depot store located at 6211 North Lincoln Avenue in Chicago, Illinois.

On that day, Plaintiff was shopping at the Home Depot with her handyman, Eduardo Hernandez ("Hernandez"). Various Home Depot employees were on duty that day, including assistant store manager Angel Lopez ("Lopez"); lumber supervisor

Jelissa Cage ("Cage"); lumber associates Clifford Martinez ("Martinez"); and Sebastian Hampton ("Hampton"); and asset protection manager Matthew Dominiak ("Dominiak").

Plaintiff and Hernandez were shopping for drywall studs, which are long pieces of galvanized steel. West and Hernandez went to Aisle 20, which contained the metal drywall studs. The photograph below, taken by Plaintiff, shows how the display looked on the day of Plaintiff's accident, *after* the accident occurred:



[Dkt. 53, ¶ 3.] As shown in the picture, a safety strap designed to keep the studs from falling was unattached and lying on the floor. [*Id.*, ¶ 4.] Some studs were on (rather than behind) a toe kick designed to keep the studs from sliding out. [*Id.*, ¶ 6.] According to Dominiak, placing the studs on rather than behind the toe kick is "a safety concern." [Dkt. 50-3 at 49 (Tr. 47:11-13).] In addition, some studs were not leaning at a backward angle.

Plaintiff and Hernandez both approached the display of studs. Plaintiff went closer to the studs to see if they were the ones she needed. While she touched a stud, Plaintiff turned to speak to Hernandez, heard a noise behind her and felt the studs strike her, which fell on her head and shoulders. The incident occurred "immediately after [Plaintiff] noticed the one [stud] and said, 'Is this the exact one?'" [Dkt. 48, ¶ 8.]

The parties dispute how much Plaintiff handled the studs before any studs fell. Plaintiff relies on the transcript from her deposition, where she testified that she "touched" one stud and felt its texture to see if was the type of material they needed, but never tried to pick it up or move it. [Dkt. 50-1 at 28 (Tr. 26:8-18), 36-37 (Tr. 34:15-35:3).] Home Depot relies on a statement from Plaintiff, handwritten on a piece of yellow notepaper the day of the incident, stating: "as grabbing a metal framing all framing and pack of framing fell on to me hitting my head, back, shoulders, arms, neck, face." [Dkt. 53-2.] Regardless of whether Plaintiff "touched" or "grabbed" the studs, it is undisputed that the studs that West touched were the studs that ultimately fell and struck her. [Dkt. 48, ¶ 14.]

Hernandez was looking at studs at the same time as Plaintiff. When Hernandez "grabbed one [stud] and pulled one out, two of them came down." [Dkt. 48, ¶ 16.] Hernandez put them back up and then handled another stud. He pulled the bottom of that stud so he could lean it on top of the other two, and "[t]hat's when [he] heard the other studs falling on [Plaintiff]." [*Id.*, ¶ 19.] Plaintiff was in the next portion of the display, approximately two feet from Hernandez when the studs fell on her. "No more than ten seconds" elapsed between when Hernandez last touched a stud and when the studs fell. [*Id.*, ¶ 21.] Hernandez testified that the beams he touched were not the beams that fell on Plaintiff. [Dkt. 45-2 at 8 (Tr. 30:18-20).]

Prior to the accident, Plaintiff did not notice any problems with either the studs or the display and did not notice the safety cable on the ground. [Dkt. 53, ¶ 11.] She did not know how the safety strap was supposed to be used and she did not see the safety strap before the studs fell on her. [*Id.*, ¶ 20.] Plaintiff does not know who took down the strap or how long it was down. Plaintiff believes there was a customer in the aisle between the time she entered the aisle and when the studs struck her. She does not believe the other person in the aisle was a Home Depot employee.

Prior to the incident, Hernandez noticed that the safety cables were not in place and that the studs were stacked at "bad angles," meaning they were "stacked on the side." [*Id.*, ¶ 22.] He did not see any Home Depot employees handling the leaning studs. He saw two Home Depot employees in the next aisle before the incident, but he never asked a Home Depot employee for assistance. Hernandez does not know how long the studs were leaning at the angle he thought was inappropriate.

4

He does not know who took down the cable or how long the cable was down before the incident.

Approximately 15 to 20 minutes before the incident, Cage (the lumber supervisor) had seen the safety cable properly attached. No other Home Depot employees know how long the safety cable had been disengaged prior to the incident. Home Depot associates inspect Aisle 20 as soon as they start working, and they regularly patrol the aisle. According to Cage, Aisle 20 was an aisle that employees "must constantly walk down every few minutes to ensure safety." [Dkt. 45-3 at 16 (Tr. 55:23-56:2).] Nonetheless, Home Depot associates rarely need to work on the drywall stud display since drywall studs are not a big seller. If a safety cable is unattached, it is more likely that a customer removed the cable.

Lumber associate Martinez testified that in the two years he worked at Home Depot, he came across a safety cable unattached "[m]aybe a few times, maybe once or twice," but "[n]ot often." [Dkt. 45-4 at 12 (Tr. 40:5-12).] Martinez further testified that as soon as Home Depot employees see a safety cable unattached, they reattach it. Martinez has never known of a Home Depot associate who walked past a situation where a safety cable had been unattached and the associate failed to reattach it. Martinez would go through his aisles at least every ten to fifteen minutes, if not ten times in an hour. If Martinez came across something that constituted a hazard, he would take care of the problem.

Lumber associate Hampton testified that in a typical shift, he would check the "major aisles," including the drywall aisle, first. [Dkt. 48, ¶ 40.] Hampton tries to

inspect the major aisles once an hour or more. If he saw studs stacked haphazardly and saw the cable was down, he would fix it.

West was the only customer that Martinez, Hampton, Lopez, or Cage were aware of who had been injured by falling studs in the lumber department when a safety cable was down. Hampton was also unaware of steel drywall studs falling before or after West's incident. However, Plaintiff maintains that two Home Depot employees told Hernandez that this was a recurring problem. In particular, Hernandez testified that after the incident he found two Home Depot employees in the next aisle. According to Hernandez, "When I talked to them and I told them they fell, they're like, 'Yeah. We know that's been an issue that they've been trying to get but management doesn't want to do nothing about it." [Dkt. 45-2 at 12 (Tr. 47:5-10).] Home Depot disputes Hernandez's testimony because he "does not describe or otherwise identify the purported associates" and "the only Home Depot employees in the aisle" were Martinez, Hampton, Cage, and Lopez, who "[e]ach confirmed that they did not make those statements or hear other Home Depot employees make those statements." [Dkt. 53, ¶ 14.]

In addition, Dominiak acknowledged that "customers sometimes take down the safety straps" and that "[t]hat's kind of a known thing with the associates." [Dkt. 48-5 at 3 (Tr. 45:14-19).] Hampton (who was deposed as an individual, not a 30(b)(6) representative) testified that he believed the manner in which the studs were stacked constituted a hazard. Home Depot denies that Hampton's testimony establishes what Home Depot "knew" or that Home Depot had notice. [Dkt. 53, ¶ 9.]

The parties disagree about whether the unattached cables create a safety hazard. According to Home Depot, studs are not safety hazards by themselves, even if the cable is disconnected, because if no one touches the studs, the studs will not come down. [See Dkt. 48, ¶ 44.] Plaintiff disputes this. [*Id.*] In support of its position, Home Depot cites testimony from Lopez and Martinez. Lopez testified that if a stud "is just standing there on its own and nobody touches it, then it's obviously not a safety hazard," but acknowledged that if anyone touched it "it probably can be a safety hazard" and that he anticipated customers would touch and move the merchandise while shopping. [Dkt. 45-5 at 24 (Tr. 88:10-89:3).] Martinez testified that "if somebody doesn't tamper with it, those beams just stay exactly where they are." [Dkt. 45-4 at 15 (51:8-12).] Plaintiff relies on Dominiak, who testified that the store manager determines whether a product like lumber should be stored flat or upright and, "if it's stored upright, it must have [a] three-inch wooden beam at the bottom and [a] safety cable farther up." [Dkt. 48-7 at 3 (Tr. 37:8-21).] Dominiak also testified that it "would be a concern for me if a cable wasn't attached." [Dkt. 48-6 (Tr. 49:23-24); see also Dkt. 50-3 at 52 (Tr. 50:3-11) (Dominiak agreeing with counsel that it would create a safety hazard "if the safety cable is not in place and the beam is not leaning backwards to ... the back of the bay, it is more straight up and down or even leaning a little bit in front").]

Hampton testified that there were "a couple of times" when he was in the aisle and the beams had fallen forward but had been caught by the safety cable. He acknowledged that if not for the safety cable, the beams probably would have fallen

7

into the aisle. [Dkt. 50-4 at 47-48 (Tr. 45:22-46:6).] Home Depot knew that customers would sometimes take down safety cables and not reattach them. Dominiak, testifying as Home Depot's Rule 30(b)(6) witness, also admitted that customers sometimes move studs without putting them back how they found them. [Dkt. 53, ¶ 18; see also Dkt. 50-4 at 27 (Tr. 25:10-18 (Hampton testifying based on his personal knowledge that the studs would need to be recognized after customers pick through and move them). Dominiak further testified that "safety is everybody's responsibility," including the store management team, assistant store managers, department supervisors, associates, and new associate coaches. [Dkt. 50-3 at 16 (Tr. 14:1-10.)[1]

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party."

---

[1] Home Depot disputes that Dominiak's testimony supports the proposition that "safety is the responsibility of every Home Depot employee" and claims that Dominiak "testified that safety *training* is everybody's responsibility." [Dkt. 53, ¶ 19 (emphasis added).] While Home Depot is correct that Dominiak was being questioned about responsibility for training, his response was not limited solely to training when he offered his position that "safety is everybody's responsibility." [Dkt. 50-3 at 16 (Tr. 14:1-10).]

*Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). The Court "'may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

### III.    Analysis

Illinois law governs in this diversity case.  See *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016).  In an action alleging negligence, the plaintiff must show (1) a duty owed by the defendant, (2) a breach of that duty, and (3) injury that was proximately caused by the breach.  *Id.* (citing *Newsom–Bogan v. Wendy's Old Fashioned Hamburgers of N.Y., Inc.*, 953 N.E.2d 427, 431 (Ill. App. 2011)). Home Depot argues that it is entitled to summary judgment on each element.[2] In general, the existence of a duty is a question of law for the court to decide, while breach and proximate cause are factual matters for the jury. *Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014) (citing *Adams v. N. Ill. Gas Co.*, 809 N.E.2d 1248, 1257 (Ill. Sup. Ct. 2004)); see also *Quiroz v. Chicago Transit Authority*, 211 N.E.3d 437, 442 (Ill. Sup. Ct. 2022). There are nuances to the general rule, which the Court discusses in its element-by-element analysis below.

### A.    Duty

"A legal duty refers to a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Quiroz*, 211 N.E.3d at 442 (quoting *Choate v. Indiana Harbor Belt R.R. Co.*, 980 N.E.2d 58, 64 (Ill. Sup. Ct. 2012)). Illinois "businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid

---

[2]    "[U]nder circumstances where a landowner's conduct in creating an unsafe condition precedes the plaintiff's injury, a plaintiff may elect to pursue a negligence claim, a premises liability claim, or both." *Smart v. City of Chicago*, 43 N.E.3d 532, 544 (Ill. App. 2013). In this case, Plaintiff has apparently elected to pursue a negligence claim: that is the only count alleged in the governing complaint [Dkt. 1-2] and the only theory of liability addressed in the parties' summary judgment briefs.

injuring them." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014); see also *Waldron v. Target Corp.*, 622 F. Supp. 3d 708, 715 (N.D. Ill. 2022). "This includes a duty to inspect and repair dangerous conditions on their property or give adequate warnings to prevent injury." *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988). "Four overarching factors" also "guide[] the duty analysis in any negligence case: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Quiroz*, 211 N.E.3d at 442; see also *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. Sup. Ct. 2014).

Home Depot argues that the four-factor duty analysis compels summary judgment in its favor because the condition of the stud display (the safety strap down, studs on the kickplate, and other studs not leaning backward) was an open and obvious danger. "If a hazard would be considered an open and obvious danger to a reasonable person, this affects how we view the first two factors (foreseeability and likelihood of injury)." *Burns v. Sherwin-Williams Co.*, -- F.4th --, 2023 WL 5210857, at *3 (C.A.7 (Ill.), 2023).

Illinois follows the Restatement (Second) of Torts § 343A, which provides that "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 231 (Ill. Sup. Ct. 1990). Under Restatement § 343A, which Illinois follows, see *Ward v. K Mart Corp.*, 554 N.E.2d

223, 231 (Ill. Sup. Ct. 1990), a danger is "known" if the invitee possesses "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves," and "obvious" if "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts § 343A comment b (quoted in *Deibert v. Bauer Bros. Const. Company, Inc.*, 566 N.E.2d 239, 241 (Ill. Sup. Ct. 1990)); see also *Allied Insurance Company v. United States*, 627 F. Supp. 3d 944, 962 (N.D. Ill. 2022); *Romano v. Roundy's Illinois, LLC*, 2022 WL 4356926, at *6 (N.D. Ill. Sept. 20, 2022). "The open and obvious doctrine is an objective inquiry that considers whether a reasonable person with the plaintiff's knowledge of the situation would appreciate the risk and know to avoid the hazard." *Ward*, 554 N.E.2d at 231. "If so, we consider the risk of harm slight and expect that person to avoid the hazard on their own." *Id*.

"Whether a duty exists is a question of law for the court to decide." *Quiroz*, 211 N.E.3d at 442 (citing *Bogenberger v. Pi Kappa Alpha Corp.*, 104 N.E.3d 1110, 1118 (Ill. Sup. Ct. 2018)); see also *Burns*, 2023 WL 5210857, at *2. Often, however, "[w]hether a dangerous condition is open and obvious may present a question of fact." *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018) (quoting *Bruns*, 21 N.E.3d at 690). Only "where no dispute exists as to the physical nature of the condition" can the Court determine "whether the dangerous condition is open and obvious as a question of law." *Id*.

Although the phrase "physical nature of the condition" is not entirely clear, courts applying the standard have examined both the visibility of the condition and how a reasonable person would perceive it. In *Dunn*, for instance, the plaintiff was injured after a 16-foot-tall stack of insulation fell on him while he was removing rolls of insulation in front of the leaning stack. The plaintiff admitted at his deposition that the stack "seemed too high," and that "it was pretty obvious" the stack "was leaning and unstable"; the plaintiff's son, who was with him at the time of the accident, testified the same. 880 F.3d at 904. Before beginning to load his van, the plaintiff also parked and waited in his truck to "monitor the insulation for five minutes to determine whether 'it was safe to proceed.'" *Id*. Under those circumstances, "the district court correctly determined that 'the undisputed evidence allows for only one conclusion: ... the leaning and unstable stack posed an open and obvious danger that a reasonable person with Dunn's knowledge would have appreciated.'" *Id*. at 907.

In *McCarty v. Menard, Inc.*, 927 F.3d 468 (7th Cir. 2019), the plaintiff tripped over a display sign while loading materials into his cart. The summary judgment record showed that the plaintiff chose the materials he wanted by looking at the sign, walking right up to the sign, and repeatedly stepping over or turning toward the sign while loading materials. *Id*. at 471. Based on that record, the plaintiff's subjective testimony that he did not see the sign did "not create a triable issue of material fact on whether a reasonable person in his position would have been aware of the display sign." *Id*. at 471-72; see also, e.g., *Pryor v. Chicago Transit Authority*, 2022 WL

13

275494, at *6 (Ill. App. Jan. 31, 2022) (a reasonable person in plaintiff's position "exercising ordinary perception, intelligence and judgment would recognize both the condition and the risk involved in walking off the train platform into the path of an oncoming train").

Consistent with the Restatement and this precedent, Home Depot recognizes that to be considered "obvious," "both the condition and the risk" must be apparent to a reasonable person in the position of Plaintiff, exercising ordinary perception, intelligence, and judgment. [Dkt. 44 at 8 (quoting *Prostran v. City of Chicago*, 811 N.E.2d 364, 368 (Ill. App. Ct. 2004)).] See also *Romano*, 2022 WL 4356926, at *6 ("if the physical nature of the condition and risk is not disputed, whether the dangerous condition is open and obvious is a question of law"); *Wright as Next Friend of Wright v. Waukegan Community Unit School District 60*, 2022 IL App (2d) 210334, ¶ 29, 2022 WL 1468106, at *5 (Ill. App. May 10, 2022) ("if there is any dispute as to the physical nature of the condition or how the condition might be perceived, or where it is possible for reasonable minds to draw divergent inferences as to the nature of the condition, the question must be decided by a trier of fact"). Home Depot argues that it has made both showings because: 1) "West observed and touched the studs," and 2) "Before the incident, Hernandez noticed the studs were disorganized, and the safety cable was disengaged." [Dkt. 44 at 9.] While these two particular facts are undisputed, other disputed questions of fact remain that preclude summary judgment based on the open and obvious doctrine.

14

It is undisputed that Plaintiff was able to *see* the stud display. But it is disputed whether a reasonable person with her knowledge of the situation would appreciate the risk the display presented and know to avoid the hazard. The photo of the display that Plaintiff took after the accident shows the safety cable is down, studs are on the toe-kick, and studs are at various angles rather than all backward leaning. Based on the picture alone, the Court cannot say as a matter of law that a reasonable person would appreciate that the safety strap on the floor created a risk that the studs would fall—or "even that the strap on the floor was a safety strap that should have been securing the studs." [Dkt. 49 at 10.] Nor can it say whether a reasonable person would necessarily know that the placement of some studs on the toe kick created a risk that the studs would fall or would know the purpose of the toe kick, or know that the particular angle of the studs created a risk that they would fall. There is no signage explaining the necessity of the safety cable or how studs should be stacked (behind the toe-kick, leaning backward) to prevent them from falling forward.

Plaintiff is a customer and testified that she did not understand these risks. In particular, she testified that prior to the accident, she did not notice any problems with either the studs or the display and did not notice the safety cable on the ground. [Dkt. 53, ¶ 11.] She did not know how the safety strap was supposed to be used and she did not see the safety strap before the studs fell on her. [*Id.*, ¶ 20.] Home Depot maintains it is irrelevant that Plaintiff did not subjectively appreciate the danger, because the standard is "whether a reasonable person would have appreciated the danger." [Dkt. 52 at 8.] While Plaintiff's own perception is not dispositive, her

testimony is at least of some probative value to the issue of how a reasonable person would have viewed the danger. Home Depot offers little of its own evidence to counter Plaintiff's testimony or show that her perception was unreasonable. Instead, it relies on the fact that Hernandez noticed the studs were disorganized, and the safety cable was disengaged. [Dkt. 44 at 9.] But arguably, Hernandez is not a proper comparator for how reasonable person in Plaintiff's position—a homeowner shopping in a hardware store—would perceive the risk. Hernandez is a professional handyman, with experience handling drywall studs. Even if Hernandez is a proper comparator, his testimony gets Home Depot only so far. Prior to the incident, Hernandez noticed that the safety cables were not in place and that the studs were stacked at "bad angles," meaning they were "stacked on the side." [*Id.*, ¶ 22.] But Home Depot does not suggest that Hernandez thought that studs would start falling from the display simply by lightly touching one, as Plaintiff testified.

Home Depot claims that "well-settled precedent shows that leaning and disorganized objects like the beams in this case present open and obvious hazards that a reasonable person should appreciate." [Dkt. 52 at 8.] It cites a single Illinois Appellate Court case in support, which involved markedly different facts than this case. In *Rivas v. Westfield Homes of Illinois, Inc.*, 692 N.E.2d 1359 (Ill. App. 1998), the plaintiffs were homeowners who were visiting their under-construction house when a large panel of drywall fell on top of the husband. The record showed that the husband had attempted to pull the drywall panel away from the wall when it fell on him and that the wife had shouted at her husband to stop because she thought it was

a "possibly dangerous" situation. *Id.* at 1360. The court concluded that there was no reason for the defendant homebuilder to have expected that the plaintiffs would not have discovered or realized the danger of the stack of drywall, because "a reasonable visitor to a construction site would appreciate the danger associated with an unfinished house," the panels were "significant in size (4 feet by 12 feet) and were leaning against a wall," and "a person exercising ordinary perception, intelligence, and judgment would have known of the possibility of the stack tipping and falling if moved." *Id.*

There are too many factual differences between this case and *Rivas* for the Court to read it as establishing a blanket proposition that a reasonable person should appreciate the risk of any items stacked vertically against a wall. In this case, Plaintiff was not on an admittedly dangerous construction site, but was injured while shopping in a retail store, in an aisle where customers were expected to help themselves in retrieving drywall studs. According to Plaintiff's testimony, all she did was lightly touch a stud—unlike the husband in *Rivas* who attempted to pull the sheet of drywall away from the wall. After turning around to speak with Hernandez studs fell and hit Plaintiff on her head and neck, injuring her. Home Depot has not established that a reasonable person with Plaintiff's knowledge of the situation would necessarily appreciate the risk of simply touching the studs and know to avoid the hazard. See, e.g., *Wright*, 2022 WL 1468106, at *6 (genuine issue of material fact existed as to whether an open roller gate fence on a school playground presented an open and obvious danger to a ten-year old child who was injured while he hung from

the fence, precluding summary judgment in a negligence action by the child's father asserting the school district failed to maintain a safe premises); *Broustis v. Cardinal Health 200, LLC*, 2016 WL 5373196, at *3 (N.D. Ill. Sept. 26, 2016) (it was for jury to decide if condition of landscaping island was an open and obvious condition where, among other things, the parties disputed whether defect in island, though visible, was apparent to reasonable person in position of plaintiff); *Cruzen ex rel. Cruzen v. Sports Authority*, 369 F. Supp. 2d 1003, 1006–07 (S.D. Ill. 2005) (denying summary judgment to sporting goods store on negligence claim brought by parent of child injured using a pogo stick in the store, where the court could not say as a matter of law that the danger posed by the pogo stick was "known and obvious to a boy of [the son's] age"); cf. *Greenhill v. REIT Management & Research, LLC*, 156 N.E.3d 1, 17 (Ill. App. 2019) (dangerous condition of freight elevator—it was missing a functioning audible signal and an electronic sensor which would have prevented the elevator gate from lowering once construction worker began entering—though visible, was not apparent, and thus open and obvious doctrine did not apply as defense to worker's negligence claim against building management company; worker did not know the "door close" button was being pressed, and worker was struck within a second or two of another elevator passenger pressing the "door close" button).

Finally, the Court still must consider the third and fourth "duty" analysis factors—the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on Home Depot. See *Bruns*, 21 N.E.3d at 690 ("The existence of an open and obvious condition is not an automatic or *per se* bar to

the finding of a legal duty on the part of the defendant" and "[i]n assessing whether a duty is owed, the court must still apply traditional duty analysis to the particular facts of the case" (internal citation and quotation marks omitted)). In its opening brief, Home Depot argues that the third and fourth factors do not justify imposing a duty on Home Depot because (1) additional precautions were unnecessary given the open and obvious nature of the risk; and (2) requiring the store to have employees constantly monitor the store or station employees in each aisle would be too onerous.

In response, Plaintiff does not dispute that Home Depot did not have a duty to continuously monitor the store. The case law on that point is well established. *See*, *e.g.*, *Zuppardi*, 770 F.3d at 652; *Howard v. Wal–Mart Stores, Inc.,* 160 F.3d 358, 359 (7th Cir. 1998) (a business "is not required to patrol the aisles continuously, but only at reasonable intervals"). But Plaintiff points out that this is not the only step that Home Depot could have taken to substantially reduce the risk that someone would be injured by studs that were not correctly stacked or secured in the vertical display. Plaintiff maintains that "[s]imply placing a sign asking customers to reengage the safety strap and put the studs back how they were found would have significantly mitigated any risk," as would "placing a warning that studs are prone to fall." [Dkt. 49 at 11.] Home Depot's only argument in reply is that "[a]dditional warnings are unnecessary and unjustified when the alleged hazard is open and obvious." [Dkt. 52 at 10.] Since the Court concludes that whether the open and obvious doctrine applies involves questions of fact that must be decided by a jury, Home Depot has no viable

response to Plaintiff's argument that Home Depot "needed only to post a warning sign and that doing so would not be onerous." [*Id.*]

For these reasons, Home Depot is not entitled to summary judgment on the "duty" element of its negligence claim.

## B.    Breach

Both parties recognize that to be liable for breaching the duty to maintain its property in a reasonably safe condition, a defendant "must have had actual or constructive notice of the dangerous condition." *Culli*, 862 F.2d at 123 (citing *Olinger v. Great Atlantic and Pacific Tea Co.*, 173 N.E.2d 443, 445 (1961)); cf. *Olivarius v. Tharaldson Property Management, Inc.*, 695 F. Supp. 2d 824, 832 (N.D. Ill. 2010) ("[M]ost courts applying Illinois law analyze a business owner's actual or constructive notice of a dangerous condition as a fact issue relevant to whether the defendant *breached* its duty of care." *Id.* (collecting cases)). Plaintiff concedes that the record lacks evidence that Home Depot had actual notice that the stud display was arranged in an unsafe way on the day of Plaintiff's accident. There is no evidence that a Home Depot associate left the cable down or arranged the studs haphazardly, or that a Home Depot associate failed to fix a display that had been rearranged by another patron. Rather, the undisputed evidence is that Home Depot employees were trained to and did monitor Aisle 20 on a regular basis and, when necessary, replace the safety cable and rearrange the studs.

Plaintiff proceeds solely on a theory of constructive notice. Constructive notice is generally a question of fact to be resolved by the jury, but it may be resolved by the

trial court as a matter of law when the facts are not in dispute and only one reasonable inference can be drawn from the undisputed facts. *State Farm Fire & Casualty Co. v. Welbourne*, 85 N.E.3d 561, 565 (Ill. App. 2017); see also *Serrano v. Menard, Inc.*, -- F. Supp. 3d --, 2023 WL 3200235, at *2 (N.D. Ill. May 2, 2023); *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1054 (Ill. Sup. Ct. 2006); *Barr v. Frausto*, 65 N.E.3d 915 (Ill. App. 2016).

The parties agree that constructive notice can be established either (1) by presenting evidence that the dangerous condition was present for a sufficient length of time such that in the exercise of ordinary care its presence should have been discovered, or (2) by showing that the dangerous condition was part of a pattern of conduct or a recurring incident. See *Piotrowski*, 842 F.3d at 1040; *Zuppardi*, 770 F.3d at 651; *Culli*, 862 F.2d at 123. Plaintiff proceeds solely under the second theory, that the dangerous condition was part of a pattern of conduct or a recurring incident. [See Dkt. 49 at 6-7.] Home Depot emphasizes, and Plaintiff does not dispute, that this theory of liability requires evidence of both a recurring hazard and a pattern of inadequately responding to those hazards. [See Dkt. 52 at 5-7.]

Home Depot argues that Plaintiff cannot show a pattern. Home Depot relies on lumber associate Martinez's testimony that, in the two years preceding Plaintiff's incident, he recalled finding a safety cable unattached "maybe once or twice," but "[n]ot often." [Dkt. 45-4 at 12 (Tr. 40:5-12); see also Dkt. 44 at 7.] Home Depot also asserts that, "[a]side from the alleged incident involving West, no Home Depot employee deposed was aware of steel drywall studs falling before or after West's

21

incident or of other persons injured by falling studs in the lumber department when a safety cable is down." [*Id.*]

Home Depot appears to be correct that there is no evidence of prior injuries. But Home Depot has not shown that actual injury is required under the case law. For instance, in *Culli*, 862 F.2d at 126-27, the Seventh Circuit found that the defendant gas station's pattern of inadequately responding to oil spills was established even though the opinion contains no suggestion that any patrons other than the plaintiff were injured by slipping. Home Depot also fails to sufficiently grapple with other evidence that it knew about the risk of studs falling into the aisle. For one, there's Hernandez's testimony about his alleged conversation with two Home Depot employees that he located in the next aisle immediately after the accident. According to Hernandez, "When I talked to them and I told them they fell, they're like, 'Yeah. We know that's been an issue that they've been trying to get but management doesn't want to do nothing about it." [Dkt. 45-2 at 12 (Tr. 47:5-10).] In its reply brief, Home Depot argues that Hernandez's testimony is not admissible as an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(D) because he "does not describe or otherwise identify the purported associates" and "the only Home Depot employees in the aisle" were Martinez, Hampton, Cage, and Lopez, who "[e]ach confirmed that they did not make those statements or hear other Home Depot employees make those statements." [Dkt. 53, ¶ 14.] It also argues that "statements made by unidentified individuals cannot be admissions of a party-opponent under Federal Rule of Evidence 801(d)(2)(D)." [Dkt. 52 at 3.]

But the Court does not read the cases Home Depot cites (which are not binding on this Court regardless) as establishing a blanket rule that an admission under Rule 801(d)(2)(D) can never come from an unidentified employee. In *Indianapolis Minority Contractions Association, Inc. v. Wiley*, 1998 WL 1988826, at *17 (S.D. Ind. May 13, 1998), the court followed the Eighth Circuit's rule that an employee's "statement containing a reiteration of what someone told another employee" (which was "hearsay within hearsay") "is not admissible as an admission when the author of the statement is unknown." *Tomanovich v. City of Indianapolis*, 2005 WL 4692616, at *1 (S.D. Ind. 2005), followed suit.

There are "two relevant requirements" for a statement to be admissible under Rule 801(d)(2)(D). *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003). First, the statement "must be an admission" and, second, the statement must be made "concerning a matter within the scope" of the employment. *Id.* In this case, Hernandez testified as to what Home Depot employees allegedly told him directly: "We know that's been an issue that they've been trying to get but management doesn't want to do nothing about it." [Dkt. 45-2 at 12.] Comparable statements made by unidentified employees have been found admissible under Illinois' equivalent to Rule 801(d)(2)(D). See *Pavlik v. Wal-Mart Stores, Inc.*, 753 N.E.2d 1007, 1010–12 (Ill. App. 2001) (unidentified store employee's alleged statement to customer concerning her prior knowledge of spill fell under the party admission exception to the hearsay rule, and thus were admissible in customer's slip-and-fall action against store; statements were made by the employee during the employment relationship and about a matter

23

within the scope of employment); *Vojas v. K mart Corp.*, 727 N.E.2d 397, 400–01 (Ill. App. Ct. 2000) (store employees' statements to patron, made in response to patron's report that she had slipped and fallen on slippery substance on aisle floor, that "I thought they [who was unidentified] cleaned that up," and "apparently not," concerned matter within scope of their employment, and thus were admissible in patron's personal injury action against store under hearsay exception for statements of party opponent).

Courts in this district have denied summary judgment under similar circumstances—even when the identity of the employee is unknown—since the weight to give such testimony is ultimately a question for the factfinder. *Lobianco v. Bonefish Grill, LLC*, 21-cv-4180, 2023 WL 3864591, at *4 (N.D. Ill. June 7, 2023) (unidentified waitress's statement "I told them to wipe that up," admissible non-hearsay evidence under the Rule); *Miller v. TGI Friday's, Inc.*, 05-cv-6445, 2007 WL 723426, at *4 (N.D. Ill. March 5, 2007) (unnamed hostess who said restaurant "should have cleaned up the stair," admissible under Rule 801(d)(2)(D), noting "it is a jury's function to determine its credibility and weigh the evidence accordingly.")

Home Depot further argues that even if the statements of the unidentified Home Depot associates are admissible under the hearsay exception, they at most "establish those employees' personal knowledge of beams falling" and "do not establish constructive notice imputed to Home Depot." [Dkt. 52 at 4.] Of course, the testimony is not equivalent to a Rule 30(b)(6) deposition, but it is nonetheless probative of what Home Depot knew. It also is not the only evidence that Home Depot

has. Home Depot's asset protection manager Dominiak, who oversaw Home Depot's safety compliance program and did testify as a Rule 30(b)(6) deponent, acknowledged that "customers sometimes take down the safety straps" and that "[t]hat's kind of a known thing with the associates." [Dkt. 48-5 at 3 (Tr. 45:14-19).]

Home Depot emphasizes that it is not enough for Plaintiff to show a recurring hazard, but also that it had a pattern of inadequately responding to the hazard. It argues that Plaintiff cannot meet this burden because the undisputed evidence is that Home Depot associates "would have corrected the disengaged cable or disorganized display as soon as the employee saw the cable or display in that condition." [Dkt. 52 at 6.] Home Depot compares this case to several involving slip and falls on store property, including *Culli*, 862 F.2d at 126. Although Plaintiff does not address this argument head on (instead arguing as part of the "duty" analysis that Home Depot could have better guarded against the hazard by warning customers about the need for the safety cable and the risk of falling studs), the Court is hesitant to accept Home Depot's comparison to slip and fall cases without accounting for the individual factual circumstances of this case. In a retail store, it's inevitable there will be some spills, especially where liquids are sold. See *Shimkus v. Target Corp.*, 2012 WL 619500, at *4 (N.D. Ill. Feb. 24, 2012) ("[T]he fact that spills are common at Target is both unsurprising (in light of its business) and insufficient to demonstrate notice under *Culli. Culli* requires a pattern or practice of *inadequate responses* to such spills.") The obvious way to deal with spills is to clean them up, which requires a store to maintain some sort of policy or practice for regular maintenance. But steel beams falling into

the aisle at the touch of a customer presents a different sort of hazard. Knowing that the beams may fall if the safety cable is down and the beams are not properly arranged, should Home Depot be expected to take any other precautions besides telling its associates to be on the lookout for safety cables that are down or displays that are improperly arranged?

The Court cannot say as a matter of law based on the summary judgment record before it that Home Depot adequately responded to the known risk of studs falling into the aisle if the safety cable was not attached and/or the display was not properly arranged. For reasons that are not clear, Plaintiff does not argue that the display should have been arranged in some other manner—perhaps storing the beams horizontally. But there are other potential precautions, short of stationing an employee in the aisle and constant patrolling—that Home Depot could have taken to reduce the risk of beams falling onto patrons. It could post a warning, such as: the safety cable must be engaged; ask for help; don't put studs on the kickstand; all studs must be leaning this way, etc. After all, it trains its associates to take those precautions and to fix the displays when they are arranged incorrectly.

All of this is to say that a reasonable jury might find that Home Depot should have provided this information to customers, and that in failing to do so it had, in Home Depot's words, a "history … of inadequately responding" to the hazard. [Dkt. 52 at 7.] Home Depot discounts the need for such warnings on the basis that the hazard presented by the display is open and obvious. But whether a customer would understand the necessity and use of the safety cable is disputed—undercutting both

the open and obvious argument and Home Depot's contention that simply having its associates replace the cable and rearrange the display when they saw they perilous condition was an adequate response to the problem, given the potential for injury posed by falling steel beams. For these reasons, Home Depot is not entitled to summary judgment on the breach element of Plaintiff's negligence claim.

### C.  Proximate Cause

Finally, Home Depot argues that Plaintiff cannot establish that its alleged negligence proximately caused her injury because Hernandez, not Home Depot, was the proximate cause of beams falling on Plaintiff. Home Depot relies solely on *Kemp v. Sisters of Third Order of St. Francis*, 493 N.E.2d 372 (Ill. App. Ct 1986), an Illinois appellate court case involving a patient who was injured in a hospital room after a nurse (who did not work for the hospital) tripped over an IV pole, causing the glass bottle attached to it to fall on the plaintiff. The plaintiff sued the hospital for negligence, alleging that the injury was caused by the hospital's decision to use a glass bottle rather than a plastic bag on the IV pole. The court concluded that the hospital's decision to use a glass bottle was not the proximate cause of the plaintiff's injury, because the nurse's subsequent independent act became the effective intervening cause, which broke the casual connection and itself became the proximate cause. See *id*. at 373. Home Depot argues that in this case, "if no one touches the studs, the studs will not fall," and the studs fell on Plaintiff "only after she touched the studs and only after Henandez moved the studs," making Hernandez, not Home Depot, the proximate cause of her injury.  [Dkt. 44 at 15.]

But as Plaintiff correctly points out, an intervening act of a third party will cut off proximate cause only when the intervening act is unforeseeable. [See Dkt. 49 at 12.] See, e.g., *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018) ("A cause is superseding when it is a cause of independent origin that was not foreseeable." (cleaned up); *Empress Casino Joliet Corp. v. Averus, Inc*., 189 N.E.3d 68, 84 (Ill. App. 2020) (the proximate cause analysis asks "whether the intervening efficient cause was of a type that a reasonable person would see as a likely result of his or her conduct"); *Greenhill v. REIT Management & Research, LLC*, 156 N.E.3d 1, 18 (Ill. App. 2019) ("the subsequent act of a third-party does not break the causal connection between a defendant's negligence and a plaintiff's injury if the subsequent act was probable and foreseeable"). Both Hernandez's and Plaintiff's acts of moving the stud were entirely foreseeable. The studs, like many other products in Home Depot stores, are displayed in a way that allows customers to help themselves; it knows customers will sift through studs in making their selections. Home Depot does not address this argument in its reply brief and is not entitled to summary judgment on the causation element of Plaintiff's negligence claim.

## IV. Conclusion

For these reasons, Home Depot's motion for summary judgment is denied.

Enter: 20-cv-7035
Date:  September 12, 2023

_____
Lindsay C. Jenkins
United States District Judge