UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Carla West, *Plaintiff*, v. Home Depot U.S.A., Inc. *Defendant*. | No. 21 CV 1145 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Plaintiff Carla West was shopping at a Home Depot in Chicago, Illinois, on January 15, 2020, when several drywall studs made of galvanized steel fell from a store display and injured her (the "Incident"). West sued Home Depot alleging it was negligent in maintaining the studs. After the Court denied Home Depot's motion for summary judgment, Home Depot moved to exclude six of West's experts' testimony. The Court need only discuss three. None of West's causation experts—Drs. Dudycha, Kotecha, and Lee—were aware of, let alone reviewed, West's highly salient medical history prior to issuing their causation opinions. "This does not an expert opinion make." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010). And without expert testimony on causation, West cannot establish the Incident caused her harm beyond what West herself can competently establish. The Court will exclude five of the six experts Home Depot challenged, and reserves ruling on the sixth.

I. **Background**

A major dispute in this case is whether injuries to West's neck, back, knee, and legs were pre-existing or caused by the Incident. West devotes three experts to

1

proving the latter: a chiropractor, Dr. Justin Dudycha; a neurosurgeon, Dr. Nilesh Kotecha; and an orthopedic surgeon, Dr. Andrew Lee.[1] All three experts base their causation opinions on their personal treatment of West after the Incident; none were retained as part of the litigation nor treated or knew West before the Incident.

Prior to the Incident, West had a long and documented history of chronic pain in these areas. In December 2012 while serving in the Houston Police Department, West was involved in a car accident that left her with a herniated disc in her back. [Dkt. 67-1 at 3.][2] West went to Foundren Orthopedics in 2013, where she complained of pain in her back and left leg, as well as numbness in her lower extremities. [Dkt. 67 at 2.] West underwent physical therapy and received injections. [*Id.*] In August 2013, Dr. Osborne declared West was "partially impaired, with a light duty work restriction." [*Id.*] West medically retired from the force in January 2015 because of these injuries, and has not worked since. [Dkt. 67-1 at 3-4.]

From 2016 through 2022, West received treatment at the Kelsey-Seybold Clinic in Houston. She told clinic personnel in February 2018 that she had "chronic back pain and was taking medications and seeing a neurosurgeon." [Dkt. 67 at 2.] Prior to the Incident, the clinic noted West suffered from chronic back pain, and that she had tenderness in her neck and shoulders, possible fibromyalgia, and had tingling and decreased sensations in her lower extremities. [*Id.*] To ease West's pain, she was treated with narcotics and prescription medication. [*Id.*] The Incident then occurred

---

[1] West also offers the testimony of an economist, Stan Smith; a nurse, Rebecca Busch; and an engineer, John Newquist.
[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

on January 15, 2020, and West sued Home Depot for injuries allegedly sustained during the Incident.

Home Depot's core argument for why all three causation experts should be excluded is the same: they were ignorant of West's medical history, and without considering West's pre-Incident physical condition, the experts cannot offer reliable testimony on what caused her injuries.

## II. Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. This Rule provides that a qualified expert may opine on an issue relevant to a case where "the proponent demonstrates to the court that it is more likely than not that" (a) the expert's scientific, technical, or specialized knowledge will help the factfinder determine a fact in issue; (b) the expert's testimony is based on sufficient facts or data; (c) the expert used reliable principles and methods; and (d) the expert reliably applied those methods to the fact of the case. Fed. R. Evid. 702; *see also Artis v. Santos*, 95 F.4th 518, 525 (7th Cir. 2024).

The operative version of Rule 702 came into effect on December 1, 2023. The Advisory Committee explained the reason for the amendment to the longstanding rule was to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments. The Committee added the amendment was necessary in part because "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the

3

expert's methodology, are questions of weight and not admissibility", which is an "incorrect application" of the Rule. *Id.* Still, the Committee clarified "[n]othing in the amendment imposes any new, specific procedures." *Id.*

The recent amendment is therefore not a wholesale change in the law, but rather a refocusing of the Supreme Court's instruction for district court judges to act as a "gatekeeper" to ensure "proposed expert testimony 'is not only relevant, but reliable'" when testimony is challenged. *Artis*, 95 F.4th 518, at 525 (quoting *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 589 (1993)).

To determine whether proposed expert testimony is reliable, the Court focuses "on the expert's methodology, not his ultimate conclusions."[3] *Kopplin v. Wisconsin Central Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019). An expert's proposed testimony is relevant when it helps the factfinder "understand the evidence" or "determine a fact in issue." *Daubert*, 509 U.S. 579 at 591. In addition to these requirements, the court must also evaluate whether the proposed expert is qualified to give each of their opinions. *See e.g., Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). District courts possess "broad latitude" in deciding these issues. *United States v. Hill*, 818 F.3d 289, 297 (7th Cir. 2016).

## III. Analysis

Home Depot challenges the causation opinions of Drs. Dudycha, Kotecha, and Lee. The thrust of each motion is the same: the experts' opinions are unreliable

---

[3] The 2023 amendment to Rule 702 reminds the court's "focus" also applies to the sufficiency of the expert's facts and data, as well as the application of the methodology to the facts.

because they did not review or consider West's medical history in reaching their opinion. West has the burden of establishing her experts' opinions satisfy Rule 702.

### a. Dr. Justin Dudycha

Dr. Justin Dudycha is a Doctor of Chiropractor who treated West on several occasions after the Incident. Home Depot argues Dr. Dudycha is not qualified to opine on causation as a chiropractor. Home Depot further contends that even if he were, Dr. Dudycha did not rely on sufficient data nor employ a reliable methodology. [Dkt. 67 at 6-8.] Both arguments are grounded in Dr. Dudycha's failure to review West's pre-Incident medical records. The Court agrees, and therefore need not decide whether Dr. Dudycha is qualified to give such an opinion.

West's first visit to Dr. Dudycha's chiropractic office came five days after the Incident. [Dkt. 67 at 3.] West was initially seen by Dr. Dudycha's colleague, Dr. Sehat. Prior to her first session, West filled out a form stating the Incident caused injuries to her neck, low back, and left knee. [Dkt. 67-3 at 4-5.] West never informed Drs. Sehat or Dudycha about her history of chronic pain or other injuries stemming from the car accident. [*Id.*] In fact, West affirmatively told Dr. Dudycha on multiple occasions that she had no prior pain—back or otherwise—before the Incident. [*Id.* at 13.] In treating West, Dr. Dudycha never asked if she was involved in other accidents or had pre-existing injuries, and his entire understanding of the Incident is based on what she told him. [*Id.*] Dr. Dudycha did not know about the car accident, and never saw any of West's pre-Incident medical records from Foundren Orthopedics or the Kelsey-Seybold Clinic.

5

Nevertheless, Dr. Dudycha opines the Incident caused West's injuries. In defense of Dr. Dudycha's basis for issuing the opinion, West asserts he "inquired into Ms. West's medical history, which led to [his] knowledge of the incident at Home Depot and the symptoms Plaintiff had been experiencing since the incident." [Dkt. 82 at 7.] West also points to his personal observation of West, as well as tests he ran on West, including an MRI and radiology reports stemming therefrom. [*Id.*] This is insufficient to render a reliable opinion.

Dr. Dudycha's failure to analyze West's pre-Incident medical records, and his ignorance of her pre-Incident conditions—indeed, his affirmative misapprehension of the issue—renders his opinion unreliable for lack of "sufficient facts or data", at a minimum. Fed. R. Evid. 702(b); *see also Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644-45 (7th Cir. 2010); *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824-26 (7th Cir. 2010); *see also Johnson v. United States*, 2024 WL 1246503 (E.D.N.Y. Jan. 16, 2024) (excluding expert's causation opinion under revised Rule 702 where expert did not consider plaintiff's medical history and relied on inaccurate information provided by plaintiff).

Dr. Dudycha himself admitted at his deposition he reached his causation conclusions under the assumption West had no pre-Incident injuries. [Dkt. 67-3 at 13 ("As far as I know, everything that [West] was treating for was related to her accident at Home Depot from what she stated to me.").] But that is irrefutably incorrect. West was diagnosed with a herniated disc, and had been complaining of and receiving treatment for chronic back pain, extremity numbness, and other physical injuries

6

consistently for nearly a decade prior to the Incident. Without this knowledge, the Court cannot see how Dr. Dudycha could reliably opine that any of West's injuries were caused by the Incident; he had no baseline comparison to her physical condition pre-Incident. And without knowing the history of West's medical issues, his analysis of West's tests and MRIs lacks crucial context.[4]

The Court further agrees with Home Depot that *Myers* and *Happel* are instructive, although not squarely on point. In *Myers*, the Court held the experts' ignorance of the plaintiff's medical history meant the expert did not use a differential etiology[5] (as plaintiff claimed he did) to reach his conclusion.[6] *Myers*, 629 F.3d 639, at 644-45. The Court concluded the expert "simply treated Myers and assumed his injuries stemmed from his work … the basis for their opinions is properly characterized as a hunch or an informed guess." *Id.* at 645. As West points out, a differential etiology is not required to establish causation and Dr. Dudycha is not claiming he conducted one. [Dkt. 82 at 5-6.] But Dr. Dudycha was operating under a false assumption—that West had no injuries before the Incident—and he did not do any other investigation into West's pre-Incident condition. This brings his opinion on what caused her injuries within the ambit of an "informed guess."

---

[4] This information may be sufficient to offer a diagnosis (current state of an injury) or prognosis (future outlook for an injury), but causation requires some understanding of what existed before an injury.
[5] *Myers* explained that differential etiology is the methodology by which a physician "rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." *Myers*, 629 F.3d at 644.
[6] The expert in *Myers* stated he was not opining on causation, but noted during his deposition that "if you are interested in causation, then from your standpoint, [the medical history is] important." *Id.* at 645.

7

In *Happel*, the Seventh Circuit affirmed the exclusion of a causation expert who did not cite to any specific methodology in reaching his conclusion, and instead relied "solely on his past experience and the temporal proximity" between the accident and injury, which "does not an expert opinion make." *Happel*, 602 F.3d 820, at 825-26. West argues "Dr. Dudycha did much more than that", but the only evidence she cites that does not fit that description are the MRI and subsequent tests. [*See* Dkt. 82 at 6-7 (pointing to Dr. Dudycha's education and experience, West's self-reported medical history, the MRI, and radiology reports).] But the Court cannot see how reviewing an MRI would permit Dr. Dudycha to opine on causation when he had no understanding whatsoever of what West's MRI would have shown before the Incident.

West does not substantively grapple with this deficiency. Instead, West relies on the historic safe harbor that where "a medical expert has relied upon a patient's self-reported history and that history is found to be inaccurate, district courts usually should allow those inaccuracies in that history to be explored through cross-examination." [*Id.* at 8 (quoting *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000)).] But this is the precise type of weight vs. admissibility distinction the recent amendment to Rule 702 aimed to correct: "Many courts have held that the critical questions of *the sufficiency of an expert's basis*, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702." Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments (emphasis added).

The above principles applied to the revised Rule 702 coalesce in *Johnson*, 2024 WL 1246503. In that case, Johnson was in a car accident and sought treatment afterwards for pain to her hands and wrists. *Id.* at *2. Johnson told her treating expert the pain only started after the accident, but Johnson had a well-documented history of hand and wrist pain prior to the accident. *Id.* at *2-3. Johnson's expert admitted his understanding was Johnson was "asymptomatic prior to the car accident" and he was unaware of Johnson's medical records reflecting her prior injuries. *Id.* Like Dr. Dudycha, Johnson's expert did not consider any of the plaintiff's medical records beyond his own. *Id.* at *5.

Defendants argued the expert's causation opinion (that the car accident caused the hand and wrist pain) was unreliable for lack of sufficient data because it was "based upon a false history presented by Plaintiff" and he did not consider her contradictory medical history. *Id.* at *6. The Court agreed the expert's opinion should be excluded because it was based "solely on Plaintiff's inaccurate subjective reports of her history" and "[w]ithout the temporal relationship, Dr. Leo articulated no other basis for his inference that the Accident proximately caused Plaintiff's injuries." *Id.* The expert himself admitted "the fact that symptoms were present beforehand negates what I'm stating in my narrative" regarding causation. *Id.*

The same outcome is warranted here. Ultimately, even if Dr. Dudycha's basis for his opinion would have survived under *Walker*, and the Court has doubts it would, the "new" Rules make clear the Court must be satisfied the proponent has carried its burden of establishing each element of Rule 702. West has not done so here because

9

she has not established Dr. Dudycha relied on "sufficient facts or data" in reaching his causation opinion, so the testimony will be excluded.

### b. Dr. Nilesh Kotecha

Based on nearly identical facts and law, Home Depot has also moved to exclude Dr. Nilesh Kotecha's causation opinion. [Dkt. 71.]

Dr. Kotecha, a neurosurgeon, first treated West roughly six months after the Incident on July 17, 2020. [Dkt. 71-3 at 4.] West told Dr. Kotecha steel beams fell on her during the Incident and she was "pinned down" as a result.[7] [*Id.*] Based on what West told her, Dr. Kotecha was under the impression West "had not had any symptoms of neck or back pain prior to the" Incident, so Dr. Kotecha "felt that the cause of her weakness, her sensory deficits, her pain, were as a result of the shelves that she was struck with." [*Id.* at 5.] Dr. Kotecha opined medical history is important because "the history is going to lead me towards potential causes and potential treatment options in taking care of the patient's symptomology." [*Id.* at 3.]

Dr. Kotecha also confirmed during his deposition that his understanding of what occurred during the Incident is solely based on what West relayed, that she never told him about any pre-Incident pain or injuries, that he did not know about the car accident, and that he never reviewed any of her pre-Incident medical records. [*Id.* at 20-21.]

---

[7] West testified in her deposition she was momentarily knocked down but pushed herself back up "because [she] knew that if [she] stayed there [she] was toast", which appears inconsistent with being pinned by the beams. [Dkt. 67-1 at 12.]

Dr. Kotecha's causation opinions must be stricken for the same reasons as Dr. Dudycha, and none of West's arguments to the contrary change this result. West repeats her argument that Dr. Kotecha "inquired into Ms. West's medical history", but does not explain how that matters when the information he received was misleading and incorrect. [Dkt. 81 at 4.]

West then recounts all the work Dr. Kotecha performed—personal examination, neurological examination, nerve studies, MRIs, etc.—but she has not demonstrated how these tests could allow Dr. Kotecha to opine on causation when he had no knowledge of West's pre-Incident physical condition. And Dr. Kotecha, like the expert in *Myers*, admitted he is more focused on "taking care of the patient and her symptoms" than ascertaining the cause of the injury. [Dkt. 71-3 at 21]; *see also Myers*, 629 F.3d 639, at 645 (medical history does not make "a hell of a lot of difference one way or the other. You put your interest in what he has got wrong with him on the day you treat him. Now, if you are interested in causation, then from your standpoint, it's important.")

Finally, West argues that Dr. Kotecha's causation opinion is proper because he ruled out a degenerative condition (progressive loss of function) as the cause of West's injuries. [Dkt. 81 at 4.] This argument fails for two reasons. First, the car accident that eventually forced West to medically retire from the police force is not a degenerative condition. Had Dr. Kotecha known about the trauma caused by the car accident and resulting medical issues, it may well have impacted his causation analysis on what he agrees is a complicated issue. [*See* Dkt. 71 at 7.]

11

Second, Dr. Kotecha ruling out potential causes suggests he used a differential etiology. But to properly conduct a differential etiology, Dr. Kotecha would have had to rule out West's medical history as a potential cause. *Myers*, 629 F.3d at 645 ("here it's clear that the physicians did not use a differential etiology; they knew little to nothing about Myers's medical history"). This Dr. Kotecha did not do. Instead, he "simply opined" the Incident caused the injury because he was under the erroneous assumption West had no pre-Incident injuries and did not review any records that would have corrected his understanding. Dr. Kotecha did not rely on sufficient facts or data, and his causation opinion will be excluded.

c.   **Dr. Andrew Lee**

Dr. Andrew Lee is West's final causation expert, an orthopedic surgeon whose causation opinion is limited to whether the Incident caused the injury to West's left knee. [Dkt. 80 at 2.] That opinion will be excluded.

Dr. Lee first treated West two months after the Incident in March 2020. [Dkt. 73-1 at 8.]  As with Drs. Dudycha and Kotecha, Dr. Lee operated under the assumption West had no pre-Incident injuries based on information relayed by West. [*Id.* at 9.] West told Lee that a "heavy object fell on her knee and traumatized the knee."[8] [*Id.* at 14.] Dr. Lee accepted this as true and has no independent knowledge of the Incident, nor any history of injuries to West's knee. [*Id.*]

Dr. Lee testified West had a meniscus cartilage tear and chondromalacia (cartilage loss) in her left knee. [*Id.* at 7.] Dr. Lee noted these injuries could be

---

[8]   When asked during her deposition whether any beams struck her knees, West replied "No. I don't remember the beam striking my knees." [Dkt. 67-1 at 12.]

12

traumatic or degenerative, and that it is "almost impossible" to ascertain causation through "looking at the MRI, or even during the arthroscopy." [*Id.* at 11.]

When asked whether he believed the Incident caused the injuries to her left knee, Dr. Lee stated "based on her history, and whatever she said happened, and the temporal correlation of her onset of symptoms, or aggravation of symptoms, my opinion is that it is related to the injury." [*Id.* at 14-15.] After testifying he believed West had some pre-Incident degeneration to her knee, he made the additional "assumption" her degeneration "probably got aggravated because of the" Incident. [*Id.* at 15.] Dr. Lee did not get these "assumptions" from the tests he performed on West, but "just purely based on the history" West relayed to him. [*Id.*]

The Court need not belabor the point. Dr. Lee's causation opinion—to the extent he even provided one—must be excluded for the same reasons as Drs. Dudycha and Kotecha. Here, Dr. Lee explicitly testified his causation opinion was based on his understanding of West's (erroneous) medical history and close timing. Nothing more. And while West argues these factors support admissibility, [Dkt. 80 at 4-5], they are plainly insufficient to satisfy Rule 702. *Happel*, 602 F.3d 820, at 826 (an opinion that "relies solely on … past experience and the temporal proximity" of the event to the injury "does not an expert opinion make"); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-905 (7th Cir. 2007) ("[t]he mere existence of a temporal relationship between" an event and injury "does not show a sufficient causal relationship.") As to the final piece of evidence she relies on—the tests Dr. Lee performed—even Dr. Lee

13

admitted causation cannot be divined through this analysis. [Dkt. 73-1 at 11.] Dr. Lee's opinion as to what caused West's left knee injuries is excluded.

In excluding West's causation experts, the Court is not holding reliance on inaccurate self-reported medical history necessitates a finding of unreliability for insufficient facts or data under Rule 702(b). Rather, the Court's holding is limited to the facts presented here where the medical history is crucial to understanding causation, the experts affirmatively relied on inaccurate and misleading self-reported information, and they failed to review other information that could mitigate these shortcomings.

### d. Impact of Rulings on Litigation

Excluding all of West's medical causation experts has significant implications for the litigation. "Illinois … require[s] expert testimony in cases involving specialized or complex issues beyond a layperson's understanding."[9] *In re Paraquat Prods. Liab. Litig.*, 2024 WL 1655500, at *3 (S.D. Ill. Apr. 17, 2024) (citing *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 878 (7th Cir. 2021)); *Thompson v. LaSpisa*, 2023 IL App (1st) 211448, ¶ 32 (expert testimony is required where "the proof consists of specialized medical knowledge beyond the ken of the ordinary juror, thus requiring testimony from an expert in the field"). An Illinois Appellate Court succinctly described when expert testimony is necessary:

> Generally, a plaintiff in a personal injury case must present the testimony of a medical expert to establish causation if the relationship between the claimed injury and the event in question requires special knowledge and training to establish. For example, if a plaintiff suffers a

---

[9] "As a federal court sitting in diversity, we apply the substantive law of Illinois." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).

14

> cut in an accident, the jury can readily determine without expert testimony that the accident caused the cut. But, if the nature of plaintiff's injury is complex or if the condition could be the result of some event or condition other than the accident in question, then expert testimony may be needed to establish the particular event that caused the pain and the underlying medical condition. This proof of causation is usually accomplished by presenting testimony from a physician on the causation issue.

*Brown v. Baker*, 672 N.E.2d 69, 71 (Ill. App. Ct. 1996).

Here, most of West's injuries are complex and of the sort that requires expert testimony. More complicated still, West's injuries occurred on parts of her body already injured pre-Incident, and West claims complications from the injuries sustained in the Incident are permanent. It is well "beyond the ken" of a layperson to understand where West's pre-Incident injuries stop, where her post-Incident injuries begin, and how long these injuries will last. *Thompson*, 2023 IL App (1st) 211448, at ¶ 32. Such evidence requires admissible expert testimony, which West does not have. And because causation is an essential element of West's negligence claim, her case cannot proceed to trial to the extent it relies on injuries "that could be the result of some event or condition other than the" Incident. *Brown*, 672 N.E.2d 69, at 71.

But not all of her injuries require expert testimony on causation. *Brown*, 672 N.E.2d at 71 ("For example, if a plaintiff suffers a cut in an accident, the jury can readily determine without expert testimony that the accident caused the cut.") West may still proceed to trial to the extent she can establish causation and damages based on her own lay testimony under Rule 701.

According to West, she experienced physical sensations (such as pain) and emotional anguish during the Incident itself. [*See* Dkt. 67-1 at 11-12.] And while West

15

cannot testify to the alleged post-Incident repercussions and harm, she may testify as a lay witness about her own perceptions of the Incident, including physical and emotional effects of the Incident. *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009) ("For those injuries that do not involve a 'complicated question of medical causation,' Plaintiff may testify as a lay witness about her own perception, including physical and emotional effects, of the accident."); *Narkiewicz-Laine v. Aer Lingus Ltd*, 2015 WL 5009766, at *4-5 (N.D. Ill. Aug. 21, 2015) (despite plaintiff's failure to present experts that could testify that an accident during a flight was the cause of a seizure, plaintiff could testify to resulting vertigo, dizziness, memory loss, and headaches for which expert testimony was not required). To this extent, a jury must evaluate the events and determine whether West should be awarded damages for any pain and suffering (assuming, of course, the jury finds Home Depot had a duty to West and breached that duty).

The exclusion of West's causation experts has other consequences, too. First, the causation experts' permanency opinions—that West's injuries from the Incident are lifelong—are excluded. Even if the opinions could satisfy Rule 702, because West cannot reliably show the Incident caused her medical injuries, exclusion is proper under Rule 403 to avoid confusing the jury or prejudicing Home Depot. Fed. R. Evid. 403. The Court likewise finds this logic precludes any testimony from Drs. Dudycha, Kotecha, or Lee, lest the jury mistakenly believe the treatment West received was for injuries caused by the Incident.

Second, the Court must exclude the expert reports of West's economist, Smith, and nurse, Busch, because both opinions rely on the assumption the Incident caused West's injuries. Without evidence at trial supporting those assumptions, exclusion is required. *See Kelly v. Village of Lemont*, 2022 WL 425582, at *3 (N.D. Ill. Feb. 11, 2022) ("there is nothing inappropriate about an expert's reliance on an assumed set of facts provided by plaintiffs' counsel, *so long as those facts are consistent with evidence that will be admitted*" at trial) (emphasis added) (citing *Williams v. Illinois*, 567 U.S. 50, 57 (2012)) (plurality opinion).[10]

## IV. Conclusion

For the reasons stated herein, Home Depot's motion to exclude the testimony of Dr. Justin Dudycha, [Dkt. 66]; Stan Smith, [Dkt. 68]; Dr. Nilesh Kotecha, [Dkt. 70]; Dr. Andrew Lee, [Dkt. 72]; and Rebecca Busch, [Dkt. 76], are granted. The Court reserves ruling on Home Depot's motion to exclude John Newquist, [Dkt. 74.]

Enter: 21 CV 1145
Date: April 26, 2024

Lindsay C. Jenkins
United States District Judge

---

[10] West's sole remaining expert is John Newquist, an engineer who plans on testifying to the reasonableness of Home Depot's policies and conduct. The Court will reserve ruling on Home Depot's motion to exclude Newquist for the present.