UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Carla West,<br><br> *Plaintiff*,<br><br>v.<br><br>Home Depot U.S.A., Inc.,<br><br> *Defendant*. | No. 21 CV 1145<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

 In a recent ruling, the Court excluded all of Carla West's experts who sought to opine West's various injuries were caused by the impact of steel drywall studs falling on her at Home Depot (the "Incident"). This holding had several corollaries. First, West's ability to recover damages was limited to those injuries West herself could competently establish. Second, her treating physician experts could not opine on the prognosis and permanency of West's injuries, nor the treatment they provided West in the aftermath of the Incident (lest the jury confuse West's diagnoses and treatments as being caused by the Incident). Finally, the Court likewise excluded West's economist, Smith, and nurse, Busch, whose opinions were premised on the assumption the Incident caused West's injuries. [Dkt. 94.]

 West has moved the Court to reconsider and vacate portions of this order. [Dkt. 97.] West argues the Court erroneously excluded her causation experts, but that West can also establish causation through Dr. Engelhard, a Home Depot expert. And if West provides expert causation testimony, then her experts' prognosis and permanency opinions, as well as the opinions from her economist and nurse, should

1

be admitted. In addition, West contends the Court overestimates the complexity of West's injuries, and that expert testimony is not required.

West's motion is denied. The Court disagrees that it erred in excluding her experts' causation opinions. Nor can the Court conclude Dr. Engelhard provided any opinions which support a finding that the injuries West suffered that require expert testimony were caused by the Incident. Accordingly, the five experts the Court initially excluded—Dr. Dudycha, Dr. Kotecha, Dr. Lee, Smith, and Busch—remain barred from testifying at trial, with a minor exception explained below. Nor is the Court persuaded by West's arguments that a layperson could ascertain causation for many of her injuries without expert testimony.

## I. Legal Standard

District courts have discretion to entertain motions to reconsider prior decisions. *See* Rule 54(b); *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."). But motions for reconsideration are "disfavored", *Patrick*, 103 F. Supp. 3d at 911, and "[t]o be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

Ultimately, motions for reconsideration serve a very limited purpose: correcting manifest errors of law or fact and presenting newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir.

1996). A manifest error of law occurs "when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (cleaned up); *see also United States v. Ligas*, 549 F.3d 497, 501-502 (7th Cir. 2008) (a manifest error of law or fact occurs "when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.")

## II. Analysis

West argues the Court made three manifest errors. First, it misapplied Rule 702 and ignored existing Seventh Circuit precedent when it found West's causation experts did not have a sufficient basis to form their opinions. Second, it incorrectly presumed her experts were the only source of causation evidence, when in fact Home Depot's expert could supply the required testimony. Finally, it overreached by concluding most of West's injuries require expert testimony. The Court reviews each in turn.

### A. Exclusion of West's Causation Experts

The Court barred West's Doctor of Chiropractor, Dr. Dudycha; her neurosurgeon, Dr. Nilesh Kotecha; and her orthopedic surgeon, Dr. Andrew Lee from testifying that the Incident caused West's injuries. The basis for excluding each expert was similar: none of the experts were aware of West's salient medical history in rendering their causation opinions, and in fact, they affirmatively relied on West's inaccurate representation she had no previous injuries in these areas. Consequently, the Court held West failed to meet her burden of showing "it is more likely than not

3

that" these expert's opinions were "based on sufficient facts or data." Rule 702(b); [Dkt. 94 at 5-14].[1]

In so ruling, the Court relied heavily on the Advisory Committee's comments to the operative version of Rule 702, which came into effect just six months ago on December 1, 2023. The Committee explained Rule 702 required amending because "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility", which is "incorrect." Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments; *see also* [Dkt. 94 at 3-4]. The Court held these instructions supersede caselaw instructing that where "a medical expert has relied upon a patient's self-reported history and that history is found to be inaccurate, district courts usually should allow those inaccuracies in that history to be explored through cross-examination." [Dkt. 94 at 8-10]; *see also Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000).

In her motion, West argues this Court misinterprets the amendment and that cases such as *Walker* are still good law. [Dkt. 97 at 8-15.] West outlines the factual similarities between what Drs. Dudycha, Kotecha, and Lee did in this case as compared to the medical providers in *Walker*; namely, both sets relied on a physical examination of the plaintiff and the plaintiff's inaccurate recitation of their medical history to opine on causation. [*Id.* at 8-12.]

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

As to the amendment's impact, West argues the Committee meant to clarify that Rule 702 is subject to Rule 104(a)'s preponderance of the evidence standard as opposed to the more permissive standard under Rule 104(b). [*Id.* at 13-14.] And according to West, there is nothing in *Walker* or its progeny that suggest it applied the Rule 104(b) standard in holding cross-examination is the appropriate place to question a medical provider who relies on inaccurate medical history. [*Id.*]

The Court disagrees. As explained more fulsomely in the order, the Court reads the Rule 2023 amendments to be aimed precisely at cases like *Walker*. [Dkt. 94 at 8-10.] In *Walker*, the expert relied in part on inaccurate medical history in reaching his conclusion, but otherwise employed a methodology the Seventh Circuit deemed sufficient. *Walker*, 208 F.3d at 586. In determining the district court erred by excluding the opinion, the Seventh Circuit quoted portions of *Daubert* which discussed the importance of cross-examination and noted the defendant could have used the inaccurate medical records to call the expert's conclusions into question. *Id.* at 586-87. Ultimately, the Seventh Circuit held the "critical point is that [the expert] employed a proper methodology." *Id.* at 587; *see also Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020-21 (7th Cir. 2000) (expert testimony admissible because his methodology was "generally appropriate" and *Daubert* "is concerned primarily with the issue of methodology").

In both cases, the Seventh Circuit sidestepped an analysis of whether the expert's opinion was "based on sufficient facts or data" because the testimony was "the product of reliable principles and methods." Rule 702(b)-(c). The text of the

5

operative Rule 702 and accompanying Committee comments make clear this is insufficient. Now, courts must ensure the proponent of expert testimony establishes that each of the four elements of Rule 702 are satisfied by a preponderance of the evidence. A proper methodology is not enough if the expert did not rely on sufficient facts or data.

The Court is not satisfied West has met this burden. Her experts relied on inaccurate (indeed, affirmatively misleading) medical histories and a personal examination. Nothing more. The Court stands by its prior ruling that this factual basis is inadequate "where the medical history is crucial to understanding causation, the experts affirmatively relied on inaccurate and misleading self-reported information, and they failed to review other information that could mitigate these shortcomings." [Dkt. 94 at 14.] The factual similarities between this case and *Walker/Cooper* are irrelevant.

Accordingly, the Court declines to reconsider its prior holding, and the causation opinions of Drs. Dudycha, Kotecha, and Lee remain excluded.

### B. Dr. Engelhard as West's Causation Expert

Although West's experts are barred from testifying on causation, she contends she can still offer expert causation testimony from Home Depot's expert, Dr. Engelhard. [Dkt. 97 at 8-10.] Home Depot concedes Dr. Engelhard can testify in West's case in chief, but argues the point is meaningless here because Dr. Engelhard did not opine the Incident caused West's injuries. [Dkt. 103 at 2-3.]

West's argument relies on the following opinion from Dr. Engelhard's report: "The evaluation and treatment given [to West] at St. Francis Hospital, and Dana

6

Chiropractic (for 18 sessions) were reasonable, and were related to the accident of 1/15/2020." [Dkt. 97 at 8.] West was taken to St. Francis Hospital's emergency room following the incident, where she was evaluated for "tenderness of the cervical, thoracic, and lumbar spine and anterior right shoulder." [*Id.*] At the chiropractor, West received treatment for spinal injuries and pain in both knees. [*Id.* at 9.] Dr. Dudycha ordered MRIs of Plaintiff's spine, which revealed various injuries. [*Id.*]

Home Depot argues West ignores the rest of Dr. Engelhard's report, including his fundamental conclusion as to what injuries West suffered: "West sustained a contusion of the right shoulder and some transient head, neck, shoulder, arm and back pain—where she reported that the steel studs struck her." [Dkt. 103 at 3.] Dr. Engelhard also opined "West had pre-existing and chronic lumbar pain, as documented in her past medical records." [*Id.*] As to West's trip to St. Francis Hospital following the Incident, Dr. Engelhard agrees the evaluations and treatments West received were reasonable, but notes all her tests came back negative (i.e., St. Francis did not find any serious medical issues with West). [*Id.* at 4.] Accordingly, the visit does not establish the Incident caused West any complex injuries.

Dr. Engelhard also made specific findings regarding West's treatment at the chiropractor. For instance, he disputed the need for Dr. Dudycha to order MRIs, and concluded the MRI findings "showed only normal, mild degenerative changes, as would be expected for a 48-year-old individual, with no acute changes (such as a disc herniation with impingement on a nerve root) that could reasonably be related to the incident of 1/15/20." [*Id.* at 3.] He also disagreed with West's experts that West's

7

injuries were severe, would require future injections or surgery, or would cause permanent disability. [*Id.* at 3-4.] Home Depot contends Dr. Engelhard's opinion regarding the reasonableness of the 18 chiropractic visits were to ease the transient (i.e. acute) pain she suffered during the Incident. [*Id.* at 5.] West's response to these arguments is that Dr. Engelhard's other opinions do not negate his "reasonableness" opinion, which a jury could choose to credit. [Dkt. 108 at 1-3.]

While the Court agrees this is theoretically true, the problem for West is Dr. Engelhard did not opine that any of her allegedly complex injuries were caused by the Incident. Indeed, as the above quotes from Dr. Engelhard's report demonstrate, he believes the opposite. The portion of Dr. Engelhard's opinion West relies on reveals nothing more than his agreement that it was reasonable for West to be taken to the emergency room after the Incident (where St. Francis did not identify any serious injuries) and that it was reasonable for her to receive chiropractic treatment for her "transient injuries."[2] And Dr. Engelhard specifically disagreed with Dr. Dudycha regarding the need for specific treatments (e.g., MRIs) or the findings therefrom.

Put simply, there is no basis for the Court to conclude Dr. Engelhard would testify at trial that West suffered anything other than transient injuries, and received reasonable evaluation and treatment for those injuries. Therefore, the Court will not disrupt its prior holding excluding West's treating experts from testifying on the prognosis and permanency of West's injuries. Likewise, West's economist, Smith, and nurse, Busch, remain barred from testifying.

---

[2] As described in more detail below, these transient injuries are precisely the type of damages the Court envisioned West being able to competently establish with lay testimony.

8

## C. Scope of West's Recoverable Injuries

West's final argument is the Court should vacate its finding that her injuries require expert causation testimony. [Dkt. 97 at 19-24.] In its initial order, the Court held West could "testify as a lay witness about her own perceptions of the Incident, including physical and emotional effects of the Incident", but nothing further because West's injuries were too complex for a layperson to understand.[3] [Dkt. 94 at 15-16.]

As previously explained, "Illinois … require[s] expert testimony in cases involving specialized or complex issues beyond a layperson's understanding."[4] *In re Paraquat Prods. Liab. Litig.*, 2024 WL 1655500, at *3 (S.D. Ill. Apr. 17, 2024) (citing *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 878 (7th Cir. 2021)); *Thompson v. LaSpisa*, 2023 IL App (1st) 211448, ¶ 32 (expert testimony is required where "the proof consists of specialized medical knowledge beyond the ken of the ordinary juror, thus requiring testimony from an expert in the field"). An Illinois Appellate Court succinctly described when expert testimony is necessary:

---

[3] West argues this holding was unfair because "the Court effectively granted summary judgment for Defendant with respect to most of Plaintiff's injuries" without the issue being briefed by the parties. [Dkt. 97 at 6-7.] Not so. The inherent consequence of excluding causation experts (the relief requested in Home Depot's *Daubert* motions) is that a party cannot not establish causation for any injuries that require expert testimony. While the parties did not delineate each and every injury in the *Daubert* briefing, the parties discussed several specific diagnoses and injuries, all of which Home Depot argued required expert testimony. Regardless, any concern West had in this regard has been rectified by her motion for reconsideration, which gave her a full opportunity to list every injury she seeks to recover at trial, [Dkt. 107], and to argue why those injuries do not require expert testimony.

[4] Because West has alleged a common-law Illinois negligence claim, substantive Illinois state law applies to when expert causation testimony is required. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). While informative, the cases cited by the parties do not apply Illinois law. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010) (applying federal common-law tort rules in 42 U.S.C. § 1983 claim); *Robinson v. Davol Inc.*, 913 F.3d 690 (7th Cir. 2019) (applying Indiana law); *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639 (7th Cir. 2010) (applying causation standards under FELA).

9

> Generally, a plaintiff in a personal injury case must present the testimony of a medical expert to establish causation if the relationship between the claimed injury and the event in question requires special knowledge and training to establish. For example, if a plaintiff suffers a cut in an accident, the jury can readily determine without expert testimony that the accident caused the cut. But, if the nature of plaintiff's injury is complex or if the condition could be the result of some event or condition other than the accident in question, then expert testimony may be needed to establish the particular event that caused the pain and the underlying medical condition. This proof of causation is usually accomplished by presenting testimony from a physician on the causation issue.

*Brown v. Baker*, 672 N.E.2d 69, 71 (Ill. App. Ct. 1996).

Here, West seeks to recover for the following injuries allegedly caused by the Incident: (1) back pain; (2) neck pain; (3) injury to the L3-4, L4-5, L5-S1 nerve roots; (4) range of motion limitations; (5) multiple disk bulges; (6) posterior central/left paracentral annular tear at L5-S1; (7) knee pain with swelling and stiffness; (8) meniscus cartilage tear in the left knee; (9) sprain of the ligaments throughout the spine; (10) dysfunction of the spine; (11) contractures of muscles at multiple sites; (12) pain in the left shoulder; and (13) general pain and suffering. [Dkt. 107 at 2.] West avers none of these injuries require expert testimony. [*Id.* at 3.]

In support of this contention, West relies on a series of cases which purportedly show the leeway courts give lay juries in inferring causation. West cites to cases, for example, where a plaintiff became dizzy after smelling paint; experienced headaches and memory loss after being hit in the head with luggage; suffered hearing loss after a plane crash; and experienced low back pain and penile dysfunction after being punched in the lower abdomen. [Dkt. 97 at 21.]

10

These cases stand for nothing more than the unremarkable proposition that expert testimony is not required when the injury intuitively flows from the accident. During the Incident, West was struck by several steel studs. The natural consequences of such an injury—and what a layperson could understand—is the physical harm (e.g., bruises, cuts, pain) from the impact, and concomitant emotional harm. The Court already held West can establish damages for these injuries at trial without expert testimony. But West seeks to recover for injuries significantly more complex than damages from being struck, many of which are degenerative in nature. She claims the studs caused damage to nerve roots in her spine, disc bulges, vertebrae tears, cartilage tears, and sprained ligaments. West has not cited to any case law where lay testimony was sufficient to establish these types of injuries from being struck by an object, which suggests causation for these injuries is complex.

West's experts agree. For example, West testified at her deposition that she immediately felt pain in her knee after the Incident, then ultimately got an MRI showing she had a torn meniscus.[5] [Dkt. 97 at 20.] West analogizes this injury to her suffering a broken leg, which a layperson can easily infer. [*Id.*] But Dr. Lee, West's orthopedic surgeon, testified that torn meniscuses can only be caused by trauma if the force "sheer[s] off the surface of the cartilage", and West admits the beams did not hit her knee. [Dkt. 103 at 8.]

As to whether the Incident caused West's knee injuries, Dr. Lee's testimony also belies West's assertion that a layperson could ascertain the cause of her knee

---

[5] The St. Francis medical records do not make any record of West complaining about knee pain. [*See* Dkt. 97-3.]

11

injuries without expert testimony. Dr. Lee opined the Incident did not cause harm to West's right knee, and it is "almost impossible to tell" whether West's injury to her left knee was caused by the Incident, even after reviewing an MRI. [*Id.*] If an expert finds it "almost impossible" to determine the causal link between the Incident and an injury, then causation on this point is plainly beyond the ken of a layperson. The same analysis is true for West's back and spine injuries. [*See* Dkt. 103 at 9-10 (citing deposition testimony from Dr. Kotecha describing the complexity and various potential causes of West's back injuries).]

The Court's conclusion that West's injuries require expert testimony is further underscored by the prior injuries. West has well-documented back and spine issues making it even more difficult for a layperson to ascertain causation. *Voykin v. Estate of DeBoer*, 733 N.E.2d 1275, 1279–80 (Ill. 2000) ("evidence of a previous injury is relevant … if it tends to negate causation or injuries"). And although West argues Home Depot has failed to provide sufficient expert analysis regarding her prior injuries, expert testimony is not required where, as here, "the nature of the prior and current injuries are such that a lay person can readily appraise the relationship." *Id.* at 1280. Here, West had a pre-Incident diagnosis of a herniated disc, complained of chronic back pain, and received injections, as well as narcotics and prescription medicine, to deal with her pain. [Dkt. 94 at 2.] A layperson would have no basis to distinguish between West's pre and post-Incident back and spinal injuries (e.g., herniated disc and bulging disc) without expert testimony. West has none.

With this holding in mind, the Court slightly modifies its prior order as follows: consistent with this Order, West's treating physicians can testify to the treatment they provided West *related to her recoverable injuries*. For example, Dr. Dudycha may testify to the treatment he provided West related to her upper-body contusions. But Dr. Kotecha cannot testify to his diagnoses of West's back/spine. The Court need not draw every line in this order, but suffice it to say this is a narrow opening.

### III. Conclusion

For the reasons stated herein, West's motion is denied, with the minor caveat stated above. The holdings in the Court's initial order otherwise stand. [Dkt. 94.]

Enter: 21 CV 1145
Date: June 5, 2024

_____
Lindsay C. Jenkins
United States District Judge